JOURNAL ENTRY AND OPINION
 I. {¶ 1} Appellant Alexander Jurczenko appeals the probate court's order, in which Jurczenko was removed as guardian of Kathryn Ewanicky and ordered to pay the debts that Ewanicky's estate had incurred during Jurczenko's guardianship. For the reasons set forth below, we affirm the order of the probate court.
 II. {¶ 2} In 1995, Jurczenko was appointed successor guardian of Ewanicky, she being adjudicated an incompetent pursuant to R.C. 2111.01(D). Jurczenko accepted the duties of guardian, as stated in R.C. 2111.14. He also tendered a guardian's bond in the amount of $340,000, guaranteed by the Fidelity and Casualty Company of Maryland.
 {¶ 3} In 2002, three companies that had provided goods and services to Ewanicky separately filed actions in the probate court seeking removal of Jurczenko as guardian and payment of the debts incurred, which totaled $50,283.47. The creditor companies in question are PMG, Inc. ("PMG"); M.A.G., Inc., d/b/a Rae-Ann Westlake ("Rae-Ann"); and Pharmed Corporation, d/b/a Bay Pharmacy ("Pharmed").
 {¶ 4} After a hearing, the magistrate recommended that Jurczenko be removed as guardian, that he pay the $50,283.47 to the successor guardian, and that, if Jurczenko fails to pay, the surety pay the debt to the successor guardian. Upon objections filed by Jurczenko, the probate court affirmed the magistrate's decision. Jurczenko appeals from the probate court's orders.
 III. {¶ 5} Jurczenko first argues that the probate court lacked subject matter jurisdiction to adjudicate what he describes as a simple action for money. Specifically, Jurczenko argues (A) that the probate court does not have subject matter jurisdiction to adjudicate the validity of a claimed debt of a ward; (B) that, because the ward's estate has suffered no monetary loss, the probate court erred by ordering the guardian to pay the money to the ward's estate; and (C) that the probate court erred in ordering the payment without factoring in Medicaid payments.
 A. {¶ 6} Jurczenko's claim that the probate court does not have jurisdiction over the accounts of a ward is incorrect. The Ohio Supreme Court has noted that the probate court's jurisdiction extends "to all matters `touching the guardianship.'" In re Guardianship of Jadwisiak
(1992), 64 Ohio St.3d 176, 180, quoting In re Zahoransky (1985),22 Ohio App.3d 75.[1] The jurisdiction here depends on whether the orders below touch the guardianship. Jadwisiak at 180.
 {¶ 7} Jurczenko argues that the claims at issue are outside of the jurisdiction of the probate court because they involve actions for money damages, i.e., actions for failure to pay an account, which he says are breach of contract actions. These actions to recover money, Jurczenko continues, properly lie within the jurisdiction of the general division of the common pleas court.
 {¶ 8} Jurczenko is incorrect. As this court stated, "`the probate court has exclusive jurisdiction and plenary power at law and in equity to fully dispose of all claims against the coguardians * * *, the coexecutors * * *, and against the surety on the bond posted by the co-guardians * * *. An action seeking monetary damages is within the probate court's plenary power at law and clearly affects the court's direction and control of the fiduciaries' conduct and affects the court's settlement of the fiduciaries' accounts. It must be remembered that the probate court's plenary power at law authorizes the probate court to exercise complete jurisdiction over the subject matter to the fullest extent required in a given case.'" Johnson v. Allen (1995),101 Ohio App.3d 181, 185, quoting Goff v. Ameritrust Co. (May 5, 1994), Cuyahoga App. Nos. 65196 and 66016.
 {¶ 9} Further, Jurczenko never contested the claims made by the creditors. The Supreme Court makes clear that the probate court lacks jurisdiction to "adjudicate and enter money judgments upon rejected
claims." In re Estate of Baughman (1998), 81 Ohio St.3d 302, 304
(emphasis added).
 {¶ 10} Therefore, the probate court was within its jurisdiction when it decided the "money actions" in this matter. As the issues "touched" the guardianship, the probate court was the proper court to adjudicate the debts. And, since Jurzcenko did not contest the creditors' claims, the probate court retained its jurisdiction.
 B. {¶ 11} Jurczenko next argues that, because the probate court failed to find that Ewanicky's estate had suffered any loss, the court erred by ordering Jurczenko to reimburse the estate. Jurczenko apparently believes that the main problem is procedural: he asks this court to contrast this case, in which the creditors "sought to determine the validity of claims against the ward, for the purpose of having the Probate Court order payments of these claims[,]" with a hypothetical case, in which "the guardian improperly expended assets for which a motion is filed with the Probate Court for an order to the guardian to reimburse the ward's estate." Jurczenko asserts that the probate court has jurisdiction over the latter example.
 {¶ 12} As the creditors point out, Jurczenko's failure to pay the $50,283.47 caused Ewanicky's estate to accrue the debt in question. The creditors are, after all, creditors of Ewanicky's estate, not of Jurczenko personally. Under R.C. 2111.151(B)(3), a guardian is personally liable for a ward's debt when the "negligence of the guardian or conservator gave rise to or resulted in the debt." The probate court therefore did not err by ordering Jurczenko to reimburse the estate.
 C. {¶ 13} Finally, with respect to the court's payment order, Jurczenko argues that the court erred by failing to factor in Medicaid payments. The probate court found that Jurczenko failed to apply timely for Medicaid payments, which in part caused the estate to incur the debts. Jurczenko argues that, had he filed for Medicaid in a timely manner, the creditors would have received only what Medicaid would have paid, which he says, would not have been the full amount. He argues that he is liable, if at all, only for the amount Medicaid would have paid.
 {¶ 14} Jurczenko states that, "[a]s there was no evidence presented of the amount Medicaid would have paid, the Order assessing Mr. Jurczenko $50,283.47 is unsupported by the facts and is contrary to law."
 {¶ 15} What is supported by the facts is that Jurczenko failed to pay the three creditors for products and services rendered. Those products and services were billed at $50,283.47. It was the responsibility of Jurczenko, as guardian of the estate, to pay those bills. Without any other evidence, the probate court correctly entered an order requiring Jurczenko to satisfy the debt.
 IV. {¶ 16} Second, Jurczenko argues that, absent clear and convincing evidence that he violated a duty imposed by R.C. 2109.24, the probate court erred by removing him as guardian.
 A. {¶ 17} According to R.C. 2109.24, the probate court "may remove any such fiduciary, after giving the fiduciary not less than ten days' notice, for habitual drunkenness, neglect of duty, incompetency, or fraudulent conduct, because the interest of the trust demands it, or for any other cause authorized by law." As used in R.C. Chapters 2101 to 2131, a "fiduciary" is "any person * * * appointed by and accountable to the probate court and acting in a fiduciary capacity for any person, or charged with duties in relation to any property, interest, trust, or estate for the benefit of another[.]" R.C. 2109.01.
 {¶ 18} Further, "removal of a fiduciary pursuant to this statute is within the sound discretion of the trial court, and a reviewing court will not reverse the order of the trial court unless it appears that the lower court abused its discretion." In re Estate of Jarvis (1980),67 Ohio App.2d 94, 97.
 {¶ 19} Therefore, we must decide whether the probate court abused its discretion in removing Jurczenko as guardian. (Jurczenko's "clear and convincing" standard is not the appropriate standard of review.)
 B. {¶ 20} The magistrate, whose recommendations were adopted by the probate court, found that Jurczenko had neglected his duty and that he should be removed. Specifically, the magistrate found that the expenses at issue "were incurred over a long period of time. Mr. Jurczenko was aware of the fact that these expenses existed and made no efforts until February 2002 to resolve these claims."
 {¶ 21} As stated above, Jurczenko did not timely apply for Medicaid. While he should have applied in April 2001, he waited until February 2002. Moreover, he knew that he should have applied in April 2001. That failure, along with his failure to pay the bills that were accumulating, certainly is cause for removal. We cannot say that the probate court abused its discretion in finding that Jurczenko neglected his duty to his ward and her estate.
 V. {¶ 22} Finally, Jurczenko argues that the probate court improperly accepted inadmissible evidence. Jurczenko argues that documents offered by PMG and Rae-Ann to show the existence of the debts were not properly authenticated. Jurczenko submits that the documents are hearsay and that the relevant hearsay exception, Evid.R. 803(6), was never met.
 A. 1. {¶ 23} Jurczenko first argues that PMG's Exhibit C was improperly admitted. PMG presented Bernadette Faddoul to testify about that exhibit, which consisted of two statements, i.e., bills. Ms. Faddoul was PMG's supervisor of accounts receivable. She testified that the documents that make up Exhibit C were taken from the company's normal business records. She explained: "They're kept by computer, the date. The script's filled and at the end of the month, the computer ties it all together and we generate a bill." The bills were sent to Jurczenko. Finally, she testified that the documents show a balance due of $2,247.10.
 2. {¶ 24} Jurczenko similarly complains about the introduction of Rae-Ann's Exhibit B. And, similarly, Rae-Ann called an employee, Gwendalyn Vonderau, who worked in the accounts receivable department to testify. Ms. Vonderau testified that Ewanicky's account was delinquent. She further testified that the practice was to bill Jurczenko monthly.
 {¶ 25} Ms. Vonderau also testified about Exhibit B, which she described as "a spread sheet that's prepared for any of our residents that are having problems with payment of their care[.]" The document ran from January 1, 2001 to the end of March 2001 and showed a balance owing of $36,404.68.
 B. {¶ 26} Again, Jurczenko argues that these exhibits were hearsay, not subject to any exception, and that they were therefore improperly accepted into evidence. The Hearsay Rule says simply, "Hearsay is not admissible except as otherwise provided * * * by these rules[.]" Evid.R. 802. One such exception is found in Evid.R. 803(6), which states:
 {¶ 27} "A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *."
 {¶ 28} Here, both exhibits can be described as a "report, record, or data compilation[.]" Further, testimony of the witnesses showed that the exhibits were made at the relevant times by the appropriate people in the course of a regularly conducted business activity. Both of the witnesses were employed in the accounts receivable departments of their respective employers. One was a supervisor and the other had direct knowledge of Jurczenko's account.
 {¶ 29} The lower court properly accepted the documents into evidence.
 VI. {¶ 30} We therefore affirm the judgment of the lower court. The probate court had jurisdiction over this guardian-related matter. Further, the probate court did not abuse its discretion in removing Jurczenko as guardian of Ewanicky. And finally, the probate court properly accepted into evidence documents showing the amount of the debt that Ewanicky's account incurred.
Costs assessed against appellant.
ANNE L. KILBANE, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] The former versions of the relevant statutes are all substantially the same as the current versions at issue.